(22 App. Div. 43.)

GANNON v. McGUIRE et al.

(Supreme Court, Appellate Division, First Department. November 12, 1897.)

1. GIFT—DELIVERY.

G. conveyed a house and lot to defendant, and took back from her a bond and mortgage, which he redelivered to her, and again took back and retained. After his death, his administratrix brought an action to foreclose the mortgage, and the evidence was to the effect that G. had taken the bond and mortgage because so advised by his lawyer, and with a purpose of making a gift to defendant, which should become effectual and complete only after his death. *Held,* that there was no such delivery as to constitute a valid gift of the bond and mortgage to defendant.

2. SAME.

On the day before the death of the mortgagee he gave to defendant, the mortgagor, an order upon a certain depository for his will, and "all other papers," and a deed, which latter, he therein stated, was the property of the mortgagor. There was nothing to indicate an intention to cancel the mortgage debt by giving this order. The bond and mortgage were among the papers, and after the mortgagee's death were first procured by defendant. *Held,* that the facts showed no delivery of the bond and mortgage as a completed gift.

3. DECLARATION OF TRUST.

A court of equity cannot, by its authority, convert an imperfect gift into a declaration of trust merely on account of that imperfection.

Appeal from special term.

Action by Sarah Gannon, as administratrix of John Gannon, against Catharine McGuire and others. From a judgment dismissing the complaint after trial at special term, plaintiff appeals. Reversed, and judgment rendered for plaintiff.

The action was brought to foreclose a mortgage covering premises known as No. 442 West Forty-Eighth street, in the city of New York, which was made and delivered to John Gannon by the defendant Catharine McGuire, and of which the complaint alleged that John Gannon died possessed. The defense was that Gannon, in his lifetime, delivered and transferred to Mrs. McGuire the bond and mortgage as a gift, and all moneys then due, or which might become due and owing, by virtue of the said bond and mortgage. In support of this defense it appeared that the premises had been the property of John Gannon, deceased, and that he conveyed the same to the defendant Catharine McGuire on March 7, 1890; that at the time of said conveyance to her there was a mortgage upon the premises, held by the Emigrant Savings Bank, and Gannon, under the advice of his attorney, had Catharine McGuire and her husband execute a mortgage to him, which is the one under foreclosure, for the equity in the premises so conveyed to her, and after a redelivery of the said bond and mortgage to Mrs. McGuire, with a deed, the said bond and mortgage were deposited by Gannon with the comptroller of the Emigrant's Bank, where they remained until after his death. Mrs. McGuire never afterwards had them

or saw them until after Gannon's death, when she obtained them from the bank on the presentation of the following order:

"To the Emigrant's Industrial Savings Bank and David Ledwith, Comptroller: Please deliver to the bearer hereof, Catharine McGuire, the deed, will, and all other papers left by me in your care and custody some time ago. I don't recollect the date. I am not able to call for those papers myself at present, and therefore I want you to deliver them to the said Catharine McGuire. The deed belongs to her.

    "Yours, &c.,                            John Gannon.
"Acknowledged, December 30, 1891, before Thomas Cushing, Notary Public."

Thomas Hogan, a witness for the defendants, testified to a number of conversations that he had with Gannon in regard to the bond and mortgage executed by Mrs. McGuire, in which Gannon informed him that, after giving the deed of the premises to Mrs. McGuire, Cushing, his lawyer, advised him to take back a mortgage for the equity, which mortgage was deposited in the Emigrant's Bank; that he did it for the purpose of protecting himself, and that it was his intention to give the house free and clear to Mrs. McGuire, excepting the mortgage to the bank, which was a first mortgage; that this bond and mortgage was to be left with Mr. Ledwith, of the bank, and, after Gannon's death, was to be delivered to Mrs. McGuire; that the decedent stated that he did not see what benefit the bond and mortgage was to him, as he never intended to use it as long as she was not to get possession of the deed during his life; and that, while Gannon lived, the bond and mortgage and deed were to be placed with Mr. Ledwith for safe-keeping. The attorney, Mr. Cushing, testified: That he was a lawyer, and was present when the transfer was made and the papers executed. He said it took place at Mrs. McGuire's house, where he was with Gannon, and that upon that occasion Gannon stated to Mrs. McGuire: "I am giving you this house in Forty-Eighth street. My lawyer, Mr. Cushing, has advised me to take back a bond and mortgage." "I protested against it, because I did not want the bond and mortgage." "The house is to be yours, subject to the Emigrant's Savings Bank mortgage. I am doing this just as a matter of form." "This is the deed of the property." That Mrs. McGuire executed the bond and mortgage, and handed it to Gannon, and he said: "I am taking this to keep for you, and put it in a place of safe-keeping, so when I die you shall have this property free and clear of any incumbrance. I am simply doing this at the request of my lawyer, and it will be of no account, because I am keeping it for you; and I will place it in a place of safe-keeping for you, to be delivered to you upon my death upon an order which I will sign to the party to deliver it to you." The witness further testified that the bond and mortgage were handed back to Mrs. McGuire when this transaction took place, and she handed them back to Gannon, who, a day or two afterwards, came to the office of the witness, and told him that Mr. Ledwith, of the Emigrant's Bank, was a friend of his, and that he would "put all the papers with him," to be delivered to Mrs. McGuire upon his death; that Ledwith had said he would hold them for her, and upon the order he would surrender them to her; that all the papers were deposited with the Emigrant's Bank; that Gannon informed him (the witness) in reference to the deposit, and said it was for the benefit of Mrs. McGuire. Mrs. McGuire testified to receiving the order on the 30th of December, 1891, from Gannon; and her husband testified that Gannon informed him that the bond and mortgage had been delivered to his wife, and that he had placed them, for the benefit of Mrs. McGuire, with Mr. Ledwith, of the Emigrant's Bank; that the decedent told Mr. Cushing that he wanted him to draw up an order for Mrs. McGuire to get what papers he left with him some time ago; that he left the bond and mortgage with Ledwith for Mrs. McGuire to get after his death, and that the order was delivered by the decedent to Mrs. McGuire; that Cushing wrote the paper, and Gannon told him to read it to him, which he did, and then handed it to Mr. Gannon, and Mr. Gannon signed it in the presence of Mrs. McGuire. Another witness—a Mr. Lefavre—testified that the decedent informed him that he had given the house to Mrs. McGuire, and had taken a second mortgage, with the understanding with Mr. Cushing and Mrs. McGuire that it was to be destroyed at his death. It appears that the property was worth about $16,000, and was

mortgaged for $7,000 in favor of the Emigrant's Industrial Savings Bank, and the second mortgage made by Mrs. McGuire was for $8,500; making up the total value of the premises. The judgment of the court below was that the title to the bond and mortgage vested in the defendant Catharine McGuire "prior to the death of plaintiff's intestate by virtue of an executed gift from plaintiff's intestate to her," and that the complaint should be dismissed; and it is from the judgment accordingly entered that this appeal is taken.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTER-SON, O'BRIEN, and INGRAHAM, JJ.

James P. Campbell, for appellant.
Abram Kling, for respondents.

O'BRIEN, J.  That it was the intention of Gannon that Mrs. McGuire should eventually, and after his death, become the owner of the bond and mortgage, and that this was in many ways expressed, clearly appears from the evidence.  That which concerns us, however, upon this appeal, is as to whether such intention was legally effectuated, so as to transfer the title of the bond and mortgage to her.  Undoubtedly, a bond and mortgage may be given by mere delivery without any writing; nor is it necessary that it should be a delivery directly to the donee.  But some unequivocal act on the part of the donor, by which he devests himself of possession and control over the subject of the gift, and delivers it to the donee, or to a trustee for the donee, is necessary to constitute a valid gift.  The essential factor which must appear to legally constitute a complete gift is delivery; and, though such delivery, depending upon the subject of the gift, may be either actual or constructive, there must still exist the element of delivery.  The definition of a gift inter vivos, and the principles relating to that subject, are to be found in the American and English Encyclopedia of Law (volume 8, p. 1313 et seq.):

"Delivery of the property in question with the intention to give is absolutely necessary to the validity of the gift.  The owner must part with his dominion and control of the thing before the gift can take effect.  There must be an actual and positive change of possession.  Words of gift are not sufficient. They alone convey no title, and are not the basis of any action.  The circumstances must be such as to show that a present gift is intended.  A gift to take effect at a future time is void."  "The delivery must be in accordance with the nature of the things given.  When reasonably convenient, there should be a manual delivery.  Where the articles are numerous, and not easily taken in the hand, it may be sufficient for the donor to point them out to the donee, and allow him to take them."  "The delivery need not be directly to the donee, but may be to a third party for him.  If the delivery to the third party is simply for the purpose of delivering it to the donee as agent or messenger of the donor, the gift is not complete till the subject of the gift actually is delivered to the donee.  Until the gift is so completed by delivery to the donee, the donor can revoke the agent's authority, and resume possession of the gift." "Where the delivery to the third person is to him in the capacity of trustee for the donee, and not as agent of the donor, such delivery completes the gift, and the subsequent death of the donor will not revoke it.  To constitute such a case, the circumstances should show a full relinquishment of dominion over the property to the trustee for the purposes of the trust, so that the trustee shall not be the agent of the donor, but shall act for the donee instead."  "If anything remains to be done to complete the gift, what is undone cannot be enforced, it being without consideration.  If left incomplete, there exists a locus poenitentiæ, and what has been done may be reversed.  If not completed dur-

ing the lifetime of the donor, his death revokes the part which has been performed. It is therefore necessary to the validity of a gift that the transaction be fully completed; that nothing essential remains undone."

This statement of what is essential to constitute a gift is recognized in and enforced by two leading cases in this state. Young v. Young, 80 N. Y. 430, and Beaver v. Beaver, 117 N. Y. 428, 22 N. E. 940. In the former case it is said:

"To establish a valid gift, a delivery of the subject of the gift to the donee, or to some person for him, so as to devest the possession and title of the donor, must be shown. * * * It is an elementary rule that such a gift cannot be made to take effect in possession in futuro. Such a transaction amounts only to a promise to make a gift, which is nudum pactum. There must be a delivery of possession with a view to pass a present right of property. 'Any gift of chattels which expressly reserves the use of the property to the donor for a certain period, or (as commonly appears in the cases which the courts have had occasion to pass upon) as long as the donor shall live, is ineffectual.' "

And in Beaver v. Beaver, supra, it is said:

"The elements necessary to constitute a valid gift are well understood, and are not the subject of dispute. There must be on the part of the donor an intent to give, and a delivery of the thing given, to or for the donee, in pursuance of such intent; and, on the part of the donee, acceptance. The subject of the gift may be chattels, choses in action, or any form of personal property, and what constitues a delivery may depend on the nature and situation of the thing given. The delivery may be symbolical and actual; that is, by actually transferring the manual custody of the chattel to the donee, or giving him the symbol which represents possession. In case of bonds, notes, or choses in action, the delivery of the instrument which represents the debt is a gift of the debt, if that is the intention; and so, also, where the debt is that of the donee, it may be given, as has been held, by the delivery of a receipt acknowledging payment."

Applying these rules, the first question is whether "the constant and essential factor" of delivery of the subject of the gift by the donor to the donee is shown, by the evidence, to exist. It is claimed that either a delivery was made on the 7th of March, when the deed and the bond and mortgage were drawn, or that the delivery was effectuated by the order given to Mrs. McGuire on the day before Gannon's death, and pursuant to which she obtained the actual possession of the bond and mortgage subsequent to his death. Taking these in their order, we do not think it can be concluded, from the testimony given by the defendant's witnesses, that at the time the bond and mortgage were executed it was intended, and that this intention was carried out, to deliver the title to the bond and mortgage to Mrs. McGuire; because, if it was desired to clothe her with the title, the making of the bond and mortgage would have been a useless and idle ceremony. What Gannon intended, as shown by his repeated declarations, was to make a gift, which should not be effectual or completed during his life, but only after his death. And this is fatal to the idea of a delivery before his death. Thus Hogan's testimony was that Gannon told him that he was going to give Mrs. McGuire the house after his death; that Mr. Cushing had advised him to get a bond and mortgage from her as a protection for himself against her while he lived; that the bond and mortgage were to be left in charge of Mr. Ledwith as long as he should live, and after his

death, and not before, they were to be delivered to Mrs. McGuire. Cushing's testimony was that most favorable to the defendant, and the substance of it was that Mrs. McGuire executed the bond and mortgage, and handed it to Gannon, who said, "I am taking this to keep for you, and put it in a place of safe-keeping for you. * * * So when I die you shall have this property free and clear of any incumbrances. I am keeping it for you, and I place it in a place of safe-keeping for you, to be delivered to you upon my death." And the defendant's husband's testimony was that after Gannon's death the mortgage was to be destroyed; that Mrs. McGuire was to get them after his death. The testimony of Lefavre, as shown, contained the same idea,—that the bond and mortgage were to be held by Gannon as a protection to himself while he lived, and that upon his death he intended they should be destroyed, or delivered to Mrs. McGuire, so that then she might have the title. This reserving to himself the control and power of exercising dominion and ownership over the bond and mortgage during life, coupled with his repeated declarations that the gift he contemplated was not to be completed during his lifetime, is fatal to the idea of a delivery before death, and entirely destroys the inference that there was any intention to deliver, or that there was an actual delivery of, the bond and mortgage on the 7th of March, when the deed was drawn, and the bond and mortgage were executed.

We have not, in this characterization of the evidence, overlooked the fact, upon which the respondent places great weight, that when the bond and mortgage were delivered to Gannon by Mrs. McGuire, after execution, Gannon then handed the bond and mortgage to her, and. after so handing her the papers, told her that he would take them, and keep them for her in a safe place until his death; because that but emphasizes what we have already said,—that whatever was the form of passing the papers from one to the other, there was not then the intention followed by the act of making a present gift of the bond and mortgage. This view is strengthened by the fact that Gannon did not surrender the control and possession to Mrs. McGuire, nor did he deposit them with the bank as her property, but, together with his will and the deed, he placed them with Mr. Ledwith, at the bank, under an arrangement that they should be delivered only upon his order. It would be impossible, from such evidence, to conclude that there was a completed gift, either on the 7th of March, when the papers were executed, or a few days subsequently, when they were, by Gannon, delivered for safe-keeping to the bank.

This brings us to a consideration of the order which was given the day before Gannon's death. He therein states that the deed which was deposited, and which was to be delivered to Mrs. McGuire, was her own property; but we find no such characterization of the bond and mortgage, which, with his will, were also deposited at the bank. As to "the will and all other papers," he says, "I am not able to call for those papers myself at present, and therefore I want you to deliver them to the said Catharine McGuire. The deed belongs to her." When we consider that this order was drawn by a lawyer, it is impossible to conclude that Gannon thereby intended to complete a de-

livery of the bond and mortgage, so as to confer the title thereto upon Mrs. McGuire. If such had been his intention, it would only have been necessary (and he was in a position to obtain this advice from his lawyer) to make a satisfaction piece, or a receipt for the amount covered by the mortgage, or an assignment; either of which would have discharged the debt represented by the bond and mortgage, or conferred title upon Mrs. McGuire. No doubt he sent for the papers with a view of getting possession of them, and of disposing of them as he thought proper, and with a view of benefiting Mrs. McGuire. But if, with those in his possession, he had handed them to her, being as he was at that time about to die, he could have made a gift causa mortis, and upon recovery he could have obtained the bond and mortgage. That he had some such notion of a gift causa mortis is much more reasonable, considering the plan which he adopted to protect himself during life, and to insure similar protection in case he should recover from the illness under which he was then suffering. If we assume, therefore, that the bond and mortgage, though not specified in the order, were included under the designation of "other papers," it cannot be construed into a delivery. There was no actual, nor do we think there was a constructive or symbolical, delivery. To constitute the latter, regard being had to the subject of the gift, which was a chose in action, the law required, as the delivery must be secundum subjectam materiam, a receipt or a satisfaction piece, or an assignment, or the physical manual delivery of the evidence of the debt back to the donee by the donor during his lifetime, to make a perfect gift inter vivos. Gray v. Barton, 55 N. Y. 69; Champney v. Blanchard, 39 N. Y. 111; Doty v. Willson, 47 N. Y. 580. Besides, it does not appear that the order was given with a view of canceling the debt due by the donee to the donor. The original intention of Gannon, as we have already concluded, in reference to the transaction of March 7th, was to make a gift which should take effect upon his death; and there is nothing in the order itself, nor in the testimony, to show that this intention or purpose was changed. The order cannot be construed into a declaration that the bond and mortgage were the property of Mrs. McGuire, but is more susceptible of the conclusion that it was an assertion of ownership by Gannon of all the papers deposited with the bank, except the deed, and that his purpose was to obtain possession of them, in that connection employing Mrs. McGuire, whom he intended to be his donee after his death, as a messenger to bring them to him. But in the order itself, or in anything he said, there is no declaration of just what he intended to do with them after he had got them again into his possession. But, as the papers never reached him, it is idle to speculate as to what he intended to do with them had they been brought to him before his death. It may well be that he intended to complete the gift, or to have handed the bond and mortgage to Mrs. McGuire, with a reservation in his own favor in case of recovery, which, as we have said, would have constituted a gift causa mortis. The crucial question which we have been called upon to determine is, not what his purpose might have been in sending for the papers, but whether, as to the bond and mortgage, there had been a completed gift prior to,

or at the time and as a result of, the giving of the order. As already pointed out, our conclusion is adverse to the defendant, and contrary to that reached by the learned trial judge, that prior to his death Gannon had made a completed gift to Mrs. McGuire. In our view, there was never such a delivery as to completely terminate the donor's custody and control of the subject of the gift; nor was it ever wholly out of his power, or so placed that the donee could get manual possession of it; nor, as a matter of fact, did she ever get possession of it until after his death.

It is unnecessary to cite authorities for the proposition that Gannon's death ended the power given to him in his lifetime to direct what should be done with his property after his death, because no man can make such disposition of his property except by a last will. So Gannon's death ended the agency of the depositary. We are therefore confronted with a case in which there is abundant evidence that it was the intention to make a gift, but that such intention was never legally carried out, because there never was an actual delivery of the subject of the gift. It is urged, however, that, apart from the theory of a gift, the defendant's title can be supported upon the view that a declaration of trust can be spelled out; and we are referred to many cases, particularly to those known as the "Savings Bank Cases," the leading one of which is Martin v. Funk, 75 N. Y. 134, as authority for the proposition that a declaration or direction by a party that the property shall be held in trust for the object of his bounty, though unaccompanied by deed or other act devesting himself of the legal estate, is an executed trust. The difficulty with this view is that there is nothing in the testimony to show an intention to create any trust. The question as to how far the courts will seize upon the theory of a declaration of trust for the purpose of sustaining an uncompleted gift has been many times mooted and discussed, and nowhere have we found it more ably handled than in Young v. Young, supra, where the facts were such, as shown by the opening sentence of the opinion, that the learned judge examined the case "with a strong disposition to effectuate that intention, and sustain the gift, if possible." But in the opinion he says:

"It is established as unquestionable law that a court of equity cannot, by its authority, render that gift perfect which the donor has left imperfect, and cannot convert an imperfect gift into a declaration of trust, merely on account of that imperfection."

And he quotes with approval the following language of Hall, V. C., in Moore v. Moore, 43 Law J. Ch. 623:

"I think it very important, indeed, to keep a clear and definite distinction between these cases of imperfect gifts and cases of declarations of trust; and that we should not extend beyond what the authorities have already established, the doctrine of declarations of trusts, so as to supplement what would otherwise be mere imperfect gifts."

The opinion continues:

"If the settlement is intended to effectuate by gift, the court will not give effect to it by construing it as a trust. If it is intended to take effect by transfer, the court will not hold the intended transfer to operate as a declaration of trust, for then every imperfect instrument would be made effectual by being converted into a perfect trust."

The learned judge also points out the distinction between that case and Martin v. Funk and kindred cases. This distinction is also noticed in Beaver v. Beaver, supra. And, in view of the very thorough examination and discussion of the questions here involved which are to be found in these and other cases, the further citation of authorities is unnecessary upon a subject concerning which the principles are so well established. In the light of such authorities we have endeavored to read the testimony, and have concluded that, considering the transactions and the declarations of Gannon, there was here but an imperfect gift, which did not confer title to the bond and mortgage upon Mrs. McGuire. Nor can we effectuate the intention of Gannon, and thus uphold the defendant's title, upon any theory that, taking all the circumstances together, they should be construed into a declaration of trust.

The judgment appealed from must therefore be reversed, and as we have the facts fully presented on this, the second, trial, and as the defendants would obtain no advantage from a new trial, there should be judgment absolute for the plaintiff, with costs in this court and in the court below. All concur.